

SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
+1 202 736 8000
+1 202 736 8711 FAX

AMERICA • ASIA PACIFIC • EUROPE

+1 202 736 8291
JGREEN@SIDLEY.COM

Sidley Austin (DC) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

April 25, 2022

**Via ECF**

Hon. Lisa G. Beckerman
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004-2304

Re:   *AJ Ruiz Consultoria Empresarial S.A. v. Bank of China Limited, et al.*, Case No. 21-ap-01216-LGB (Bankr. S.D.N.Y.)

Dear Judge Beckerman:

International Finance Corporation ("IFC") and KfW (hereafter, the "Immune Defendants") specially appear and respectfully submit this pre-conference letter in advance of the April 28, 2022, 10:00 a.m. EST pretrial conference. Without waiving their immunities or their rights to expand upon the arguments set forth in this letter and advance additional arguments, the Immune Defendants summarize below the grounds for opposing the exchange of initial disclosures that are particular to them and in addition to the grounds asserted in the Joint Defense Group letter, *see* Dkt. No. 30.[1]

The Immune Defendants oppose the exchange of initial disclosures on the following grounds: (1) proceeding with discovery of any type is premature at this time in light of the Immune Defendants' asserted immunity from suit in this action and should not take place before the adjudication of that threshold issue; and (2) it is inefficient and contrary to the interests of policy and comity to proceed with discovery given the Immune Defendants' asserted immunity. Additionally, with specific regard to IFC, its founding charter, the Articles of Agreement ("Articles")—a congressional-executive agreement—includes a provision guaranteeing the inviolability of IFC's archives, precluding discovery.

---

[1] In addition to its other arguments to dismiss this case, IFC intends to move pursuant to Federal Rule of Civil Procedure 12(b)(3) that this case be dismissed for improper venue. Nothing in this letter or IFC's participation in the upcoming pretrial conference should be construed as a waiver of IFC's immunities, including those related to venue.

Sidley Austin (DC) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

**SIDLEY**

April 25, 2022
Page 2

### 1. The Immune Defendants' Asserted Immunity Affords Protection From Discovery

The Immune Defendants have asserted immunity from suit in this action. IFC, a designated international organization, is immune under the International Organizations Immunities Act of 1945 ("IOIA"), 22 U.S.C. § 288a(b). Because the IOIA grants international organizations the same immunity as foreign sovereigns, the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. § 1605, is one source for the immunity of organizations – the other being founding treaties or agreements. *See Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759, 771 (2019). Pursuant to the IOIA and the FSIA, international organizations are thus presumptively immune from suit unless a specified exception applies. Federal courts otherwise lack subject-matter jurisdiction over a claim against international organizations. *See Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).

KfW, a state-owned entity, qualifies for immunity from suit in this action under the FSIA. *See* 28 U.S.C. § 1603(a), (b) ("foreign state" includes "an agency or instrumentality of a foreign state"). KfW is a public law institution organized and existing under German law serving public policy objectives of the Federal Republic of Germany. KfW's subscribed capital is majority-owned by the Federal Republic of Germany and minority-owned by the German Federal States. *See S & S Mach. Co. v. Masinexportimport*, 706 F.2d 411, 414 (2d Cir. 1983) (state-owned bank is "indisputably" an agency or instrumentality as defined under the FSIA). Plaintiff has failed to plead facts to show that an FSIA exception applies.

IOIA and FSIA immunity "is immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation." *NML Cap., Ltd. v. Banco Cent. de la República Argentina*, 652 F.3d 172, 194 (2d Cir. 2011) (internal quotation marks and citation omitted); *see Garcia v. Sebelius*, 919 F. Supp. 2d 43, 47 (D.D.C. 2013) (noting IOIA immunity serves the same function of shielding international organizations from the litigation process); *Inversora Murten, S.A. v. Energoprojekt Holding Co.*, Misc. Action No. 03–73, 2004 WL 5582072, at *2 (D.D.C. Aug. 6, 2004) (IOIA "immunity is immunity from the litigation process, not its result and conclusion," for "[i]mmunity is cold comfort if, to get it, one would have to spend money and go to court."), *aff'd*, 264 F. App'x. 13 (D.C. Cir. 2008). Accordingly, to afford appropriate protection "from the expense, intrusiveness, and hassle of litigation, a court must be 'circumspect' in allowing discovery before the plaintiff has established that the court has jurisdiction over a foreign sovereign defendant under the FSIA." *Ach Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 206 (2d Cir. 2016); *see also EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 486 (2d Cir. 2007).

Supreme Court jurisprudence likewise counsels against discovery before subject-matter jurisdiction has been established. *See U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.*, 487 U.S. 72, 79 (1988) (a court may not order "discovery on the merits of the litigation" before determining it has subject matter jurisdiction); *Siegert v. Gilley*, 500 U.S. 226, 231 (1991) (recognizing in the

# SIDLEY

April 25, 2022
Page 3

qualified immunity context that "discovery should not be allowed" until the "threshold immunity question is resolved"). Because the Immune Defendants have asserted their immunities in this case and those immunities have yet to be adjudicated, initial disclosures (and all discovery) are inappropriate.

  2. **Public Policy Considerations Require a Stay of All Discovery, Including Initial Disclosures**

The policies underlying FSIA and IOIA immunity and international comity require courts to resolve the immunity issue as early as possible "[i]n order to preserve the full scope of sovereign immunity." *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1127 (D.C. Cir. 2004) (internal citation omitted). Staying discovery, or, in the alternative, issuing a protective order precluding discovery as to the Immune Defendants until after adjudication of the motion to dismiss and any appeals,[2] serves judicial economy and limits unwarranted resource expenditures by an immune party.

Regarding IFC, Immunity conferred by the IOIA is designed to preclude the unnecessary expense of litigation, including the expense of identifying, researching, and producing initial disclosures, so as to protect the official character of a public international organization. *See* Committee on Ways and Means, Granting Certain Privileges and Immunities to International Organizations and their Employees, H.R. Rep. No. 1203, at 2 (1945) (the IOIA sought "not only [to] protect the official character of public international organizations located in this country," but also to "strengthen the position of international organizations of which the United States is a member when they are located or carry on activities in other countries"). Incurring the expense and burden of any discovery prior to a decision on its immunities would contravene the strong policies reflected in the IOIA.

  3. **IFC's Founding Charter Guarantees the Inviolability of its Archives and Does Not Permit Discovery**

IFC has an additional argument here. The Articles preclude all discovery from IFC. One Articles provision, entitled "Immunity of Archives," provides that "[t]he archives of the Corporation shall be inviolable." Articles of Agreement of the International Finance Corporation, Art. VI, Sec. 5, Dec. 5, 1955, 7 U.S.T. 2193, T. I. A. S. No. 3620. This provision of the Articles has been incorporated into federal law. *See* 22 U.S.C. § 282g ("The provisions of . . . article VI, sections 2 to 9, both inclusive, of the Articles of Agreement of the Corporation shall have full force and effect in the United States and its Territories and possessions upon acceptance of membership

---

[2] If the Court determines that the Immune Defendants are not immune from this suit, they have the right to an immediate appeal pursuant to the collateral order doctrine. *See, e.g.*, *Petersen Energía Inversora S.A.U. v. Argentine Republic and YPF S.A.*, 895 F.3d 194, 203 (2d Cir. 2018).

# SIDLEY

April 25, 2022
Page 4

by the United States in, and the establishment of, the Corporation."); *see also Osseiran v. Int'l Fin. Corp.*, 552 F.3d 836, 839 (D.C. Cir. 2009) (applying portions of the IFC Articles and confirming effectiveness under U.S. law); *Int'l Fin. Corp. v. GDK Systems, Inc.*, 711 F. Supp. 15 (D.D.C. 1989) (same). Moreover, the Supreme Court has recently identified an international organization's founding charter as a distinct source of privileges and immunities enjoyed by those organizations in United States courts. *Jam*, 139 S. Ct. at 771 ("[T]he privileges and immunities accorded by the IOIA are only default rules. If the work of a given international organization would be impaired by restrictive immunity, the organization's charter can always specify a different level of immunity. The charters of many international organizations do just that.").

Courts in this Circuit routinely effectuate inviolability provisions in similar international agreements to provide legal protection. *See, e.g.*, *767 Third Ave. Assocs. v. Permanent Mission of Republic of Zaire to United Nations*, 988 F.2d 295, 302 (2d Cir. 1993) (finding that the "inviolability" guaranteed by the Vienna Convention meant that eviction was not a proper remedy against a diplomatic mission that had fallen behind on rent); *Tachiona v. United States*, 386 F.3d 205, 223 (2d Cir. 2004) (finding that guarantee of personal inviolability meant that a diplomatic official could not be served with process on behalf of a non-immune entity).

Moreover, such analysis is consistent with the interpretation and protection afforded by other member countries to similar provisions, including other member entities of the World Bank Group.[3] In *World Bank Group v. Wallace*, [2016] 1 S.C.R. 207 (Can.), the Supreme Court of Canada held that another member of the World Bank Group's archives were inviolable and reversed a lower court decision allowing materials to be seized. Such "'opinions of our sister signatories' . . . are 'entitled to considerable weight'" in interpreting treaties and international agreements.[4] *Abbott v. Abbott*, 560 U.S. 1, 16 (2009) (quoting *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 176 (1999)).

\*   \*   \*

If the Court is inclined to order the exchange of initial disclosures over the objections of the non-Immune Defendants, the Immune Defendants respectfully request that the Court enter a

---

[3] Other international organizations in the World Bank Group have incorporated similar inviolability provisions in their founding documents. *See, e.g.*, Articles of Agreement of the International Bank for Reconstruction and Development, Art. VII, Sec. 5, opened for signature Dec. 27, 1945, 60 Stat. 1440, 2 U.N.T.S. 134; Articles of Agreement of the International Development Association, Art. VIII, Sec. 5., Jan. 26, 1960, 11 U.S.T. 2284, 439 U.N.T.S. 249.

[4] Other kinds of international agreements, like congressional-executive agreements, are frequently interpreted the same way as treaties. *See, e.g.*, *Weinberger v. Rossi,* 456 U.S. 25, 31 (1982) (finding that the word "treaty" in legislation can encompass other kinds of international agreements); *Air Can. v. U.S. Dept. of Transp.*, 843 F.2d 1483, 1486 (D.C. Cir. 1988) ("The MOU is an international executive agreement, which we interpret according to the principles applicable to treaties . . . .").

# SIDLEY

April 25, 2022
Page 5

protective order precluding discovery as to the Immune Defendants, including initial disclosures. Courts in this district have found it appropriate to provide a protective order where discovery is improper on the basis of an asserted immunity claim. *Preble-Rish Haiti, S.A. v. Republic of Haiti*, No. 21-CV-4960 (PKC), 2021 WL 4037860, at *4 (S.D.N.Y. Sept. 3, 2021) (quashing subpoena and interrogatories because plaintiff has not shown a reasonable basis for assuming jurisdiction).

    Respectfully submitted,

    SIDLEY AUSTIN LLP

    By: */s/ Jeffrey T. Green*
    Jeffrey T. Green (admitted pro hac vice)
    jgreen@sidley.com
    Marisa S. West (admitted pro hac vice)
    mwest@sidley.com

    JONES DAY

    Kevyn D. Orr
    korr@jonesday.com
    Dan T. Moss
    dtmoss@jonesday.com
    Steven T. Cottreau
    scottreau@jonesday.com
    Eric Snyder
    esnyder@jonesday.com

    *Attorneys for the International Finance Corporation*

    MILBANK LLP

    By: */s/ Alexander B. Lees*
    Alexander B. Lees
    alees@milbank.com
    Daniel M. Perry
    dperry@milbank.com

    *Attorneys for KfW*

SIDLEY

**SIDLEY**

April 25, 2022
Page 6

cc:   All Counsel of Record (via ECF)