**Deadline for Opposition Papers: June 23, 2022**

| | |
|---|---|
| Jeffrey T. Green | Kevyn D. Orr |
| Marisa S. West | Dan T. Moss |
| SIDLEY AUSTIN LLP | Steven T. Cottreau |
| 1501 K Street, N.W. | Eric Snyder |
| Washington, D.C. 20005 | JONES DAY |
| jgreen@sidley.com | 51 Louisiana Avenue N.W. |
| mwest@sidley.com | Washington, D.C. 20001 |
| | korr@jonesday.com |
| | dtmoss@jonesday.com |
| | scottreau@jonesday.com |
| | esnyder@jonesday.com |

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AJ RUIZ CONSULTORIA EMPRESARIAL S.A., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 21-ap-01216-LGB<br>)<br>) |
| BANK OF CHINA LIMITED, *et al*., | )<br>) |
| Defendants. | )<br>) |

**<u>DEFENDANT IFC'S MOTION TO DISMISS OR TRANSFER</u>**
**<u>THE AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

FACTUAL AND STATUTORY BACKGROUND ...................................................................1

ARGUMENT .................................................................................................................................2

    I.    IFC IS IMMUNE FROM SUIT PURSUANT TO THE IOIA ......................................3

    II.    IFC IS IMMUNE FROM SUIT PURSUANT TO ITS ARTICLES OF
           AGREEMENT ................................................................................................................3

    III.    ALTERNATIVELY, VENUE IS IMPROPER IN NEW YORK AND
           DISMISSAL IS WARRANTED UNDER RULE 12(b)(3) ...........................................5

           a.    Venue in New York is improper pursuant to IFC's Articles of
               Agreement and 28 U.S.C. § 1391(f) ..................................................................5

    IV.    AS A THRESHOLD MATTER, DISMISSAL IS WARRANTED ..............................7

    V.    TRANSFER TO WASHINGTON, D.C. IS NECESSARY IF THE COURT
           DISAGREES THAT DISMISSAL IS THE PROPER REMEDY ...............................7

CONCLUSION ..............................................................................................................................8

# **TABLE OF AUTHORITIES**

**Cases**                                                           **Page(s)**

*Aftab v. Gonzalez*,
    597 F. Supp. 2d 76 (D.D.C. 2009) ............................................................................................8

*Ajenifuja v. Dangote*,
    485 F. Supp. 3d 120 (D.D.C. 2020) ..........................................................................................2

*Atl. Tele-Network, Inc. v. Inter-Am. Dev. Bank*,
    251 F. Supp. 2d 126 (D.D.C. 2003) ..........................................................................................5

*Banco de Seguros del Estado v. Int'l Fin. Corp.*,
    No. 06 CIV. 2427(LAP), 2007 WL 2746808 (S.D.N.Y. Sept. 20, 2007) ...........................3, 4, 5

*Bro Tech Corp. v. European Bank for Reconstruction & Dev.*,
    No. 00-2160, 2000 WL 1751094 (E.D. Pa. Nov. 29, 2000) ......................................................4

*Chalabi v. Hashemite Kingdom of Jordan*,
    543 F.3d 725 (D.C. Cir. 2008) ..................................................................................................2

*In re Dinastia, L.P.*,
    381 B.R. 512 (S.D. Tex. 2007) .................................................................................................4

*Elec. Privacy Info. Ctr. v. Fed. Aviation Admin.*,
    821 F.3d 39 (D.C. Cir. 2016) ....................................................................................................2

*In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*,
    797 F.3d 148 (2d Cir. 2015) .....................................................................................................2

*Jam v. Int'l Fin. Corp.*,
    139 S. Ct. 759 (2019) ......................................................................................................1, 3, 6

*Jenkins Brick Co. v. Bremer*,
    321 F.3d 1366 (11th Cir. 2003) ................................................................................................6

*In re LimitNone, LLC*,
    551 F.3d 572 (7th Cir. 2008) ....................................................................................................7

*Luxexpress 2016 Corp. v. Gov't of Ukr.*,
    No. 15-CV-4880 (VSB), 2018 WL 1626143 (S.D.N.Y. Mar. 30, 2018) ...................................2

*Magi XXI, Inc. v. Stato della Citta del Vaticano*,
    714 F.3d 714 (2d Cir. 2013) .....................................................................................................2

*Matar v. Transp. Sec. Admin.*,
    910 F.3d 538 (D.C. Cir. 2018) ..................................................................................................2

*Mendaro v. World Bank*,
 717 F.2d 610 (D.C. Cir. 1983) ............................................................................................4

*In re Arb. between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.*,
 311 F.3d 488 (2d Cir. 2002) ................................................................................................2

*Osseiran v. Int'l Fin. Corp.*,
 552 F.3d 836 (D.C. Cir. 2009) ............................................................................................4

*Pennhurst State Sch. & Hosp. v. Halderman*,
 465 U.S. 89 (1984) ..............................................................................................................6

*Port Auth. Trans-Hudson Corp. v. Feeney*,
 495 U.S. 299 (1990) ............................................................................................................6

*Rodriguez v. Pan Am. Health Org.*,
 No. 18-CV-24995, 2020 WL 1666757 (S.D. Fla. Apr. 3, 2020) ........................................6

*Segal v. PEMEX*,
 No. 8:05-cv-2390-T-26MAP, 2009 WL 10670372 (M.D. Fla. Feb. 9, 2009) ....................7

*Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.*,
 549 U.S. 422 (2007) ............................................................................................................2

*Vila v. Inter-Am. Inv. Corp.*,
 570 F.3d 274 (D.C. Cir. 2009) ............................................................................................4

**Statutes**

22 U.S.C. § 282g ..........................................................................................................................3

22 U.S.C. § 288a(b) .....................................................................................................................3

28 U.S.C. § 1406(a) ..................................................................................................................1, 7

28 U.S.C. § 1605 ..........................................................................................................................1

**Other Authorities**

Articles of Agreement of the International Finance Corporation, art. I, Dec. 5,
 1955, 7 U.S.T. 2193, T.I.A.S. No. 3620 (as amended through April 16, 2020) .............1, 5

Exec. Order No. 10,680, 21 Fed. Reg. 7647 (Oct. 5, 1956) .........................................................1

Letter from Roberts B. Owen, State Department Legal Adviser, to Leroy D.
 Clark, Gen. Counsel, EEOC (June 24, 1980), in Marian L.
 Nash, Contemporary Practice of the United States Relating to International
 Law, 74 Am. J. Int'l L. 917 (1980) .....................................................................................4

Report of Committee on Banking and Currency, International Finance
    Corporation, H.R. Rep. No. 84-1299 ...............................................................................1

*Restatement (Third) of the Foreign Relations Law of the United States* § 467(1)
    (Am. L. Inst. 1987) ..........................................................................................................4

In addition to joining Defendants' Consolidated Motions to Dismiss, Defendant International Finance Corporation ("IFC") hereby separately moves, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3) to dismiss the amended complaint in the above-captioned matter on grounds unique to IFC alone, or, in the alternative, to transfer this matter as it pertains to IFC to the District Court for the District of Columbia pursuant to 28 U.S.C. 1406(a).

## FACTUAL AND STATUTORY BACKGROUND

IFC, established in 1956 by a congressional-executive agreement, is a public international organization, created and governed by its 186 member countries and a member of the World Bank Group. IFC's specific purpose is to further economic development by encouraging the growth of private enterprise in developing countries to support the World Bank Group's goals of ending extreme poverty and boosting shared prosperity. *See* Articles of Agreement of the International Finance Corporation, art. I, Dec. 5, 1955, 7 U.S.T. 2193, T.I.A.S. No. 3620 (as amended through April 16, 2020) ("Articles of Agreement"); *see also* Report of Committee on Banking and Currency, International Finance Corporation, H.R. Rep. No. 84-1299, at 1–2, 4 (1955).

IFC is immune from suit *both* as an international organization under the International Organizations Immunities Act ("IOIA") *and* pursuant to its Articles of Agreement. *See* Exec. Order No. 10,680, 21 Fed. Reg. 7647 (Oct. 5, 1956). Three years ago, the Supreme Court interpreted IFC's IOIA immunity as the "same immunity" from suit as is enjoyed by foreign governments. Accordingly, the IOIA is construed through the lens of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605. *See Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759, 772 (2019) (holding that IOIA immunity is interpreted through the FSIA and noting that "it is not clear that the lending activity of all development banks qualifies as commercial activity within the meaning of the

FSIA."). As the Supreme Court also noted, IFC's immunity pursuant to its Articles of Agreement (which are construed as a treaty) is a separate and distinct form of immunity. *See id.* at 764.

## ARGUMENT

Even though IFC's immunities concern subject-matter jurisdiction, the Court can and should dismiss Plaintiff's claims for the threshold reasons discussed in Defendants' Consolidated Motions to Dismiss, Dkt. No. 40, without having to reach questions of IFC's immunity from suit. *See In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 158–59 (2d Cir. 2015) (affirming dismissal on prudential standing grounds); *In re Arb. between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.*, 311 F.3d 488, 498 (2d Cir. 2002) (noting "dismissal for want of personal jurisdiction is independent of the merits and does not require subject-matter jurisdiction") (quoting *In re Minister Papandreou*, 139 F.3d 247, 255–56 (D.C. Cir. 1998)); *Chalabi v. Hashemite Kingdom of Jordan*, 543 F.3d 725, 728 (D.C. Cir. 2008) (affirming dismissal of foreign sovereign on statute of limitations grounds); *Matar v. Transp. Sec. Admin.*, 910 F.3d 538, 541 (D.C. Cir. 2018); *Elec. Privacy Info. Ctr. v. Fed. Aviation Admin.*, 821 F.3d 39, 41 n.2 (D.C. Cir. 2016). The Court may first adjudicate the defenses shared with IFC's co-defendants and the defendants in the related matter before addressing the immunity arguments below and in Defendants Consolidated Motions to Dismiss at 35–39. *See Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007); *see also Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 720 (2d Cir. 2013); *Luxexpress 2016 Corp. v. Gov't of Ukr.*, No. 15-CV-4880 (VSB), 2018 WL 1626143, at *3 (S.D.N.Y. Mar. 30, 2018). Other courts have done the same with respect to members of the World Bank Group. *See e.g., Ajenifuja v. Dangote*, 485 F. Supp. 3d 120, 125–26 (D.D.C. 2020).

In the event the Court reaches IFC's immunity from suit, however, subject-matter jurisdiction is lacking because IFC is immune, and all claims warrant the Court's dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1). Alternatively, venue in the Southern District of New York is improper, and the case must either be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) or transferred to the District Court for the District of Columbia.

## I. IFC IS IMMUNE FROM SUIT PURSUANT TO THE IOIA

"[IFC,] as a public international organization [is] entitled to enjoy the privileges, exemptions, and immunities conferred by the said International Organizations Immunities Act." *Banco de Seguros del Estado v. Int'l Fin. Corp.*, No. 06 CIV. 2427(LAP), 2007 WL 2746808, *2 (S.D.N.Y. Sept. 20, 2007). The IOIA provides that "[i]nternational organizations, their property and assets, wherever located, and by whomsoever held, shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity." 22 U.S.C. § 288a(b).

As international organizations enjoy "the same immunity from suit and every form of judicial process as is enjoyed by foreign governments," the IOIA is construed through the lens of the FSIA and its exceptions. *See Jam*, 139 S. Ct. at 772 (quoting 22 U.S.C. § 288a(b)). Because none of the FSIA exceptions applies, *see* Defendants' Consolidated Motions to Dismiss at 36–38, IFC is immune from suit pursuant to the IOIA and the FSIA.

## II. IFC IS IMMUNE FROM SUIT PURSUANT TO ITS ARTICLES OF AGREEMENT

IFC's Articles of Agreement separately provide for a collection of privileges and immunities meant to protect IFC's operations from the interference of member state governments and to enable IFC to fulfill its functions. *See* Articles of Agreement, art. VI. These privileges and immunities were incorporated into federal law when the United States joined IFC. *See* 22 U.S.C.

3

§ 282g (the immunities and privileges articulated in IFC's Articles of Agreement "shall have full force and effect in the United States.").

IFC's Articles of Agreement provide that IFC is only subject to suits brought by "debtors, creditors, bondholders, and . . . other potential plaintiffs" to whom IFC "would have to subject itself to suit in order to achieve its chartered objectives." *Mendaro v. World Bank*, 717 F.2d 610, 615 (D.C. Cir. 1983); *see also Restatement (Third) of the Foreign Relations Law of the United States* § 467(1), reporters note 3 (Am. L. Inst. 1987) ("The charters of the International Bank for Reconstruction and Development and other international financial institutions contain provisions permitting suits against the organization under some circumstances and in selected venues; these provisions were designed to permit suits by bondholders and related creditors."); Letter from Roberts B. Owen, State Department Legal Adviser, to Leroy D. Clark, Gen. Counsel, EEOC (June 24, 1980), *in* Marian L. Nash, *Contemporary Practice of the United States Relating to International Law*, 74 Am. J. Int'l L. 917, 918 (1980) (explaining that World Bank's Articles were "intended as a limited waiver of immunity specifically to permit suits by private lenders against the Bank.").

In interpreting IFC's Articles and identically-worded provisions in the founding treaties of other international organizations, courts uniformly apply the "corresponding benefits test," which reads the text of the treaties narrowly to only permit suits that enable the organizations to achieve their stated purposes. *See Osseiran v. Int'l Fin. Corp.*, 552 F.3d 836, 840 (D.C. Cir. 2009) (IFC); *Mendaro*, 717 F.2d at 617 (International Bank for Reconstruction and Development); *Bro Tech Corp. v. European Bank for Reconstruction & Dev.*, No. 00-2160, 2000 WL 1751094, at *2 (E.D. Pa. Nov. 29, 2000) (European Bank for Reconstruction and Development); *Vila v. Inter-Am. Inv. Corp.*, 570 F.3d 274, 279 (D.C. Cir. 2009) (Inter-American Investment Corporation); *In re*

4

*Dinastia, L.P.*, 381 B.R. 512, 520–24 (S.D. Tex. 2007) (IFC); *Banco de Seguros del Estado*, 2007 WL 2746808, at *4–5 (IFC).

Neither Plaintiff, nor the parties Plaintiff allegedly represents, are debtors, creditors, bondholders, or otherwise parties to whom IFC would need to subject itself to achieve its chartered objectives. Courts have rejected attempts to read IFC's Articles, and those with identical language, to permit suits brought by parties like Plaintiff who lack any direct, commercial relationship with the organization. *See Banco de Seguros del Estado*, 2007 WL 2746808, at *5 (affirming IFC's immunity in relation to claims brought by third parties who had a financial interest in a bank where IFC owned shares in the bank); *Atl. Tele-Network, Inc. v. Inter-Am. Dev. Bank*, 251 F. Supp. 2d 126, 132 (D.D.C. 2003) (affirming a development bank's immunity in relation to claims brought by a third party based on loans the development bank made to a foreign country). Moreover, Plaintiff's claims would not further IFC's chartered objectives in any way. In fact, they would severely hamper them: attenuated claims challenging agreements to which the plaintiff is neither a party nor a beneficiary would significantly undermine IFC's objective of providing financial assistance to productive private enterprises in developing countries. IFC has already been subjected to extensive pre-motion litigation in this matter, which has drained resources.

### III. ALTERNATIVELY, VENUE IS IMPROPER IN NEW YORK AND DISMISSAL IS WARRANTED UNDER RULE 12(b)(3)

#### a. Venue in New York is improper pursuant to IFC's Articles of Agreement and 28 U.S.C. § 1391(f)

IFC's Articles of Agreement preclude venue outside of the United States District Court for the District of Columbia. In relevant part, IFC's Articles of Agreement dictate that "[a]ctions may be brought against the Corporation *only in a court of competent jurisdiction in the territories of a member in which the Corporation has an office*." Articles of Agreement § 3 (emphasis added).

5

IFC's principal and only office in the United States is its headquarters in Washington, D.C. Thus, suit against IFC may only be brought in the District Court for the District of Columbia.

The FSIA's venue provisions apply to international organizations because sovereign "immunity encompasses not merely *whether* [an entity] may be sued, but *where* it may be sued." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) (emphasis in original); *see also Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 307 (1990) ("issues of venue are closely related to those concerning sovereign immunity."). Thus, "as foreign sovereign immunity extends in its entirety to international organizations, international organization immunity must necessarily encompass Section 1391(f)'s venue restrictions." *Rodriguez v. Pan Am. Health Org.*, No. 18-CV-24995, 2020 WL 1666757, at *8 (S.D. Fla. Apr. 3, 2020).[1]

Under § 1391(f)(1), "[o]nly the events that directly give rise to [the] claim are relevant. And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003). This action arises out of a sale-leaseback transaction of oil rigs located in *Brazil*. According to Plaintiff, the transaction violated *Brazilian* law. *See, e.g.,* Am. Compl. ¶¶ 4–6. Plaintiff alleges that because of this transaction, the Schahin Group filed for reorganization in *Brazil*. *Id.* at ¶ 7. The only New York nexus that Plaintiff alleges is the sale-leaseback agreement—to which Plaintiff and the parties it purports to represent were neither party to, nor beneficiary of—specifies New York as the locale for repayment of the loan and the transaction closing was in New

---

[1] International organizations enjoy the same *immunity* from suit and every form of judicial process as is enjoyed by foreign governments. *See Jam*, 139 S. Ct. at 772. Such immunity includes venue limitations. *See Rodriguez,* 2020 WL 1666757, at *8. However, IFC maintains that the provisions of the FSIA that *do not* implicate immunity, do not apply to international organizations. Instead, the IOIA governs. The FSIA also includes other language that does not implicate immunity, and thus, does not apply to international organizations.

6

York, a meeting at which only one lender was present. *Id.* at ¶¶ 13, 59. But the "substantial part of the events" begin and end in Brazil. *Id.* at ¶ 12. In addition, § 1391(f)(4) here dictates suit may only be brought in the District Court for the District of Columbia because none of the other exceptions (i.e., vessels, cargo, agency) apply. *Segal v. PEMEX*, No. 8:05-cv-2390-T-26MAP, 2009 WL 10670372, at *3 (M.D. Fla. Feb. 9, 2009). Thus, New York is an improper venue with respect to IFC.

### IV. AS A THRESHOLD MATTER, DISMISSAL IS WARRANTED

Because venue in New York is improper, 28 U.S.C. § 1406 requires this Court either to dismiss the claims outright or, "if it be in the interest of justice," to transfer the case against IFC to the proper venue. Given the numerous reasons warranting dismissal in this Motion and Defendants' Consolidated Motions to Dismiss, dismissal for improper venue is appropriate.

### V. TRANSFER TO WASHINGTON, D.C. IS NECESSARY IF THE COURT DISAGREES THAT DISMISSAL IS THE PROPER REMEDY

If this Court does not dismiss the Amended Complaint based on any of the grounds discussed herein and in Defendants' Consolidated Motions to Dismiss, transfer to the District Court for the District of Columbia is required, as this is the only possible venue for this action against IFC. *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district of division in which it could have been brought.").

Finally, there is no need for this Court to adjudicate IFC's additional jurisdiction defenses (*see supra* at 6–8; *see also* Defendants' Consolidated Motions to Dismiss at 35–39) before transferring the case. Transfer prior to adjudicating IFC's other jurisdictional defenses is appropriate because venue is improper in this district, and there is no authority for requiring a transferring court to resolve pending jurisdictional defenses before transferring to another federal

7

court. *See In re LimitNone, LLC*, 551 F.3d 572, 578 (7th Cir. 2008) (per curiam) ("[T]he indeterminacy of subject-matter jurisdiction is not, standing alone, a bar to consideration of venue."); *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 79 (D.D.C. 2009) (granting motion to transfer when defendant had pending motion to dismiss for lack of subject-matter jurisdiction).

## CONCLUSION

For the foregoing reasons and those stated in Defendants' Consolidated Motions to Dismiss, this Court should dismiss the Amended Complaint with prejudice, or in the alternative, transfer the case against IFC to the District Court for the District of Columbia.

> Respectfully submitted,
>
> */s/ Jeffrey T. Green*
> Jeffrey T. Green (admitted pro hac vice)
> SIDLEY AUSTIN LLP
> 1501 K Street, N.W.
> Washington, D.C. 20005
> (202) 736-8000
> jgreen@sidley.com

Dated: May 19, 2022

8

**CERTIFICATE OF SERVICE**

I hereby certify on this 19th day of May, 2022, I caused a true and correct copy of the foregoing Motion to be delivered via the Court's electronic filing system to:

Andrew Goldsmith
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M St NW
Suite 400
Washington, DC 20036
202-326-7900

*Attorney for Plaintiff*

>                    */s/ Jeffrey T. Green*
>                    Jeffrey T. Green
>                    SIDLEY AUSTIN LLP
>                    1501 K Street, N.W.
>                    Washington, D.C. 20005
>                    (202) 736-8000
>                    jgreen@sidley.com

9