# UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AJ RUIZ CONSULTORIA EMPRESARIAL S.A. solely as Judicial Administrator and foreign representative of SCHAHIN HOLDING S/A, *et al.*,<br><br>                                        Plaintiff,<br><br>v.<br><br>BANCO BILBAO VIZCAYA ARGENTARIA, S.A, *et al.*,<br><br>                                        Defendants. | Case No. 21-ap-1213-LGB |
| AJ RUIZ CONSULTORIA EMPRESARIAL S.A. solely as Judicial Administrator and foreign representative of SCHAHIN HOLDING S/A, *et al.*,<br><br>                                        Plaintiff,<br><br>v.<br><br>BANK OF CHINA, *et al.*,<br><br>                                        Defendants. | Case No. 21-ap-1216-LGB |

**DECLARATION OF GABRIEL SEIJO LEAL DE FIGUEIREDO**

**I.    QUALIFICATIONS**

1.    My name is Gabriel Seijo Leal de Figueiredo. I am a partner at Cescon, Barrieu, Flesch & Barreto Sociedade de Advogados, a Brazilian law firm, with a practice focused on litigation, including commercial law and insolvency matters. I hold a Degree in Law from Universidade Federal da Bahia and a Civil Law PhD from Pontifícia Universidade Católica de São Paulo.

2.    I am currently licensed to practice law in Brazil and registered under n. 202.022 before the Brazilian Bar Association, Sao Paulo State Chapter. I am also enrolled before four other State Chapters. I have been practicing law since 1999.

3.    The scope of my declaration is to present my understanding of Brazilian law as implicated by Plaintiff's claims. My understanding of the facts is based on Plaintiff's amended complaints. This declaration reflects my personal opinion and best understanding of Brazilian law.

4.    Since Brazil is a civil law jurisdiction, claims are usually based on specific statutes. In the amended complaints, Plaintiff did not specify the Brazilian statutes it claims were violated. Nonetheless, I have tried to identify the statutes that could fit Plaintiff's allegations to determine whether they apply.[1]

**II.    FACTUAL BACKGROUND**

5.    Plaintiff alleges that, between 2007 and 2009, Defendants collectively lent over $800 million to Black Gold Drilling LLC (together with its wholly owned subsidiaries, Baerfield Drilling LLC ("Baerfield"), and Soratu Drilling LLC ("Soratu"), the "Borrowers") under a Credit

---

[1] Unless otherwise noted, any case precedents cited in my opinion are persuasive, even if not binding on Brazilian courts. Except for certain procedures adopted by the high courts, Brazil does not follow the *stare decisis* doctrine.

Agreement and an Amended and Restated Credit Agreement. Am. Compl. ¶¶ 44–49, 53.² The funds loaned by Defendants were used to construct two semi-submersible oil drilling rigs, the *Amazonia* and *Pantanal*, which served as collateral for their secured loans. Am. Compl. ¶¶ 44, 48, 52, 56, 58; Perry Decl.³ Ex. A, Amended Credit Agreement at 11, 20, 33, 42.

6. Plaintiff alleges that, in September 2014, the Borrowers entered into a secured financing arrangement with a subsidiary of the Industrial and Commercial Bank of China ("ICBC"), which took the form of a sale-leaseback transaction involving the *Amazonia* and *Pantanal* (the "Sale-Leaseback Transaction"). Am. Compl. ¶¶ 69, 75–76. The collateral was sold to ICBC (or affiliates thereof), and the sale proceeds were used to repay Defendants' secured loans. Am. Compl. ¶ 69, 75–76.

7. Plaintiff brings claims of unjust enrichment and aiding and abetting breach of fiduciary duty against Defendants. Am. Compl. ¶¶ 114–133. A component of Plaintiff's claims is its allegation that the Sale-Leaseback Transaction violated Brazilian "sale of establishment" rules. Am. Compl. ¶¶ 6, 109–113. Under Brazilian law, a company's sale or transfer of an "establishment"—the entire functionality of all of a business's operations, assets, and rights—without the payment or consent of its then-existing creditors may be deemed ineffective if, after the sale, the seller would have insufficient assets to settle its liabilities. Plaintiff alleges that the *Amazonia* and *Pantanal* were establishments, that the Borrowers sold the rigs without obtaining the prior consent of all of the creditors of a group of companies Plaintiff calls the "Schahin Group," and that, after the sale, some of these companies (not including the Borrowers) did not have

---

² References to "Am. Compl." are to the amended complaint in case no. 21-ap-01213. For the purposes of my analysis, the amended complaint filed in case no. 21-ap-0213 is substantially the same as the amended complaint filed in case no. 21-ap-01216.

³ The Declaration of Daniel M. Perry in Support of Defendants' Consolidated Motions to Dismiss.

sufficient assets to pay their liabilities. Am. Compl. ¶¶ 111–112. Plaintiff seeks to recover from Defendants the amount of the repaid loans. Am. Compl. ¶ 122.

8.  In 2015, certain companies in the so-called "Schahin Group" (not including the Borrowers) filed for reorganization in Brazil (the "<u>Debtors</u>"); in 2018, a Brazilian bankruptcy court converted the Debtors' reorganization into a liquidation; in 2019, a U.S. bankruptcy court granted recognition to the Brazilian proceeding as a foreign main proceeding under chapter 15 of the Bankruptcy Code; and in 2020, the Brazilian bankruptcy court appointed Plaintiff as judicial administrator and merged the Debtors' multiple bankruptcy proceedings into one proceeding (the "<u>Bankruptcy Case</u>").[4] Am. Compl. ¶¶ 94, 98, 100–104; *see also In re Schahin Holdings S.A., et al.*, Case No. 1:19-bk-19932 (Bankr. S.D. Fla.).

9.  Plaintiff claims to bring this action on behalf of the Debtors' bankruptcy estate and "on behalf of thousands of creditors of the Schahin Group." Am. Compl. ¶ 1. As of the date of this declaration and according to public court records, the Borrowers are not debtors in the Bankruptcy Case and their liquidation has not been ordered by a Brazilian court.

**III.    ANALYSIS**

10.  Counsel for Defendants requested that I address the following questions:

A.  *Question 1: could the Borrowers' assets, including the proceeds from the sale of the* Amazonia *and* Pantanal*, be made available to the creditors of Debtors in the ongoing Bankruptcy Case under Brazilian law?*

11.  The Borrowers are not debtors in the Bankruptcy Case and, according to the public court records, have not been held liable for the debts recognized in that proceeding. Even if it were possible to extend the Bankruptcy Case to the Borrowers, which is debatable under the governing

---

[4] Pending before the 2nd Insolvency and Bankruptcy Court of São Paulo under n. 1037133-31.2015.8.26.0100.

legislation,[5] it is my understanding that a decision by the Brazilian bankruptcy court would be necessary to obtain such a result.

12. If Plaintiff wished to make the Borrowers' assets available to satisfy the creditors of the Debtors in the Bankruptcy Case, Plaintiff, as the judicial administrator, would need to file a formal motion with the bankruptcy court in Brazil.[6] According to public court records, to date, there has been no such motion by Plaintiff, let alone a decision holding the Borrowers liable for debts in the Bankruptcy Case.

13. If Plaintiff were to make such a motion in the bankruptcy proceeding, it is my opinion that Plaintiff would have to make factual showings to justify disregarding the separateness between the Borrowers and the Debtors, as required by art. 82-A of the Brazilian Bankruptcy Law ("BBL").[7] BBL art. 82-A applies the standards identified by art. 50 of the Brazilian Civil Code ("BCC").[8] The relevant portions of art. 50 of the BCC are below:[9]

---

[5] Doubt about whether the effects of the Bankruptcy Case could be extended is reinforced by the 2020 amendment of the Brazilian Bankruptcy Law, especially the addition of article 82-A, which prohibits the extension of the effects of a bankruptcy to limited liability partners, parent companies, or administrators of a bankrupt entity.

[6] Pursuant to arts. 133 et seq. of the Brazilian Code of Civil Procedure, legal personality can be disregarded only upon an express request of a concerned party or upon decision of the Prosecution Office, when it intervenes in the proceedings.

[7] The English translation of art. 82-A is as follows: "The extension of bankruptcy or its effects, in whole or in part, to limited liability equity holders, controlling shareholders and administrators of the bankrupt company is prohibited; however, disregard of the legal personality is permitted. Disregard of the bankrupt company's legal personality, for the purpose of holding third parties, group members, equity holders or administrators liable for its obligation, can only be decreed by the bankruptcy court, in compliance with art. 50 of Law No. 10,406, of January 10, 2002 (Civil Code) and arts. 133, 134, 135, 136 and 137 of Law No. 13.105, of March 16, 2015 (Code of Civil Procedure), not subject to the suspension referred to in § 3 of art. 134 of Law No. 13.105, of March 16, 2015 (Code of Civil Procedure)."

[8] Although BBL art. 82-A was only recently codified, bankruptcy courts applied the standards of BCC art. 50 when determining whether to disregard corporate separateness prior to its codification. For instance: "Extension of the Bankruptcy Effects. Provisions of article 50 of the BCC apply." *See* São Paulo State Court of Appeals; Interlocutory Appeal 2067491-68.2015.8.26.0000; Justice Teixeira Leite (July 29, 2015).

[9] The current language of BCC art. 50 was updated by Federal Statute n. 13.874/2019 (after the facts described in the amended complaints). However, the current language quoted in the chart above would apply to this case, in line with a decision from the Rio de Janeiro State Court of Appeals, which stated that the changes are immediately applicable since they only clarify the text to reflect the previous precedents of the Superior Courts. *See* Rio de Janeiro State Court of Appeals. Interlocutory Appeal 0028474-44.2021.8.19.0000.

- 4 -

| Portuguese Original | English Translation (emphasis added) |
|---|---|
| **Art. 50.** Em caso de abuso da personalidade jurídica, caracterizado pelo desvio de finalidade ou pela confusão patrimonial, pode o juiz, a requerimento da parte, ou do Ministério Público quando lhe couber intervir no processo, desconsiderá-la para que os efeitos de certas e determinadas relações de obrigações sejam estendidos aos bens particulares de administradores ou de sócios da pessoa jurídica beneficiados direta ou indiretamente pelo abuso. | **Art. 50.** In case of abuse of legal personality, characterized by *misuse of purpose* or *commingling of assets*, the judge may, *at the request of the party*, or of the Public Ministry, when it is incumbent upon it to intervene in the lawsuit, disregard it so that the effects of certain and determined lists of obligations are extended to the private assets of administrators or equity holders of the legal entity directly or indirectly benefited by the abuse. |
| **§ 1.** Para os fins do disposto neste artigo, desvio de finalidade é a utilização da pessoa jurídica com o propósito de lesar credores e para a prática de atos ilícitos de qualquer natureza. | **§ 1.** For the purposes of the provisions of this article, misuse of purpose is the use of the legal entity for the purpose of harming creditors and for the practice of illegal acts of any nature. |
| **§ 2.** Entende-se por confusão patrimonial a ausência de separação de fato entre os patrimônios, caracterizada por:<br>I - cumprimento repetitivo pela sociedade de obrigações do sócio ou do administrador ou vice-versa;<br>II - transferência de ativos ou de passivos sem efetivas contraprestações, exceto os de valor proporcionalmente insignificante; e<br>III - outros atos de descumprimento da autonomia patrimonial. | **§ 2.** Commingling of assets is understood as the absence of *de facto* separation between the assets of the parties, characterized by:<br>I - repetitive assumption by the legal entity of the equity holder's or administrator's obligations or vice versa;<br>II - transfer of assets or liabilities without effective consideration, except for those of a proportionally insignificant amount; and<br>III - other acts of non-compliance with asset autonomy. |
| **§ 4.** A mera existência de grupo econômico sem a presença dos requisitos de que trata o caput deste artigo não autoriza a desconsideração da personalidade da pessoa jurídica. | **§ 4.** The mere existence of an economic group without the presence of the requirements referred to in the header of this article does not authorize the disregard of the legal entity. |

14. Per BCC art. 50, § 4, the mere fact that one entity belongs to the same economic group of a bankrupt entity does not authorize a Brazilian bankruptcy court to automatically disregard its separateness. Instead, Brazilian law requires a party to demonstrate either: (1) a "misuse of purpose" or (2) a "commingling of assets." A "misuse of purpose" occurs when the corporate entity of a non-debtor is used to harm creditors, or for the commission of unlawful acts. A "commingling of assets" occurs when a non-debtor entity and the debtors do not act in practice as if they were separate legal entities, such as when one entity repeatedly satisfies its affiliate's obligations or takes assets for less than fair consideration.

15. In the amended complaints, it does not appear that Plaintiff alleges "misuse of purpose," since Plaintiff does not contend that the Borrowers (or their business forms) were used in an abusive way. Instead, it appears that Plaintiff attempts to meet the "commingling" prong

- 5 -

through the following allegations:

- Plaintiff alleges that all entities in what it calls the "Schahin Group" (including the Debtors and the Borrowers) have the same ultimate owners, Milton and Salim Schahin; a 2015 petition for bankruptcy in Brazil alleged that these entities were managed as part of a "single integrated economic conglomerate;" Milton Schahin's son served as C.F.O. of the Borrowers; and Schahin Engenharia (a Debtor, but not a Borrower) identified Baerfield and Soratu (both Borrowers) as "related parties" in financial statements. Am. Compl. ¶¶ 30, 40, 43. These allegations, however, would at most establish that the Debtors and the Borrowers were potentially part of the same economic group—not that they commingled assets—which art. 50, § 4 states is insufficient to disregard legal personality.

- Plaintiff alleges that Schahin Engenharia provided unidentified "services" to Borrower Soratu without a written agreement and that in 2014, the "operating expenses associated with the operations of the *Amazonia* and *Pantanal* were largely allocated to Schahin Engenharia." Am. Compl. ¶ 41. Plaintiff does not allege that services were made for ineffective consideration, or otherwise discuss this requirement of BCC art. 50, § 2, item II. It is unclear what Plaintiff means by the alleged "allocation" of expenses or how it fits into the art. 50 "commingling" analysis. To the extent Plaintiff means that Schahin Engenharia paid the Borrowers' obligations in that one year, in my opinion, this still would be insufficient to establish "commingling," since BCC art. 50, § 2 requires conduct to be "repetitive" for legal personality to be disregarded.

- Plaintiff alleges that the so-called "Schahin Group" "frequently transferred money between . . . Brazilian and non-Brazilian entities" and alleges examples of transfers between non-Borrowers between 2007 and 2011. Am. Compl. ¶ 42. I did not identify any allegation in the amended

- 6 -

complaints of repetitive transfers involving the Borrowers or transfers made for insufficient consideration.

16. In other words "commingling of assets," for purposes of disregarding legal personality, would require "a drastic situation, in which there is total impossibility of factual separation between two formally autonomous group of assets," therefore threatening "the very existence of the autonomous group of assets of a legal entity, as a separate asset group."[10] Plaintiff's allegations, described above, in my opinion, do not meet the statutory requirement of the concept.

17. Thus, even if Plaintiff were to make a motion in the Bankruptcy Case seeking to disregard the legal personalities of the Borrowers based on the allegations in the amended complaints (which, to date, it has not done), in my opinion, that motion would fail to meet the "misuse of purpose" or the "commingling of assets" requirements under BCC art. 50.

B. *Question 2: assuming the "Schahin Group" creditors had any cause of action against Defendants under Brazilian law, could they have brought their claims upon the completion of the Sale-Leaseback Transaction in September 2014?*

18. As discussed in Section C below, it is my opinion that the Brazilian law provisions regarding sales of establishments would not apply to the Sale-Leaseback Transaction. Nonetheless, assuming for the sake of argument that creditors of the Debtors had a viable cause of action under Brazilian law to challenge the Sale-Leaseback Transaction as a void establishment sale, I believe that these creditors could have brought a claim as early as September 2014. They did not need to wait until the Debtors' reorganization was converted into a bankruptcy in March 2018.

---

[10] As defined by Erasmo Valladão Azevedo e Novaes França and Marcelo Vieira von Adamek, both tenured Professors of Commercial Law at the University of São Paulo, in *Direito Processual Societário: comentários breves ao CPC/2015* (Corporate Procedural Law: Commentaries to the Civil Procedure Code of 2015). *Malheiros, 2021.* p. 112. In the Portuguese original: "desvirtuação do outro aspecto da autonomia patrimonial: a própria existência fática do patrimônio autônomo enquanto conjunto separado de bens. É uma situação drástica, em que há total impossibilidade de separação fática entre patrimônios formalmente autônomos."

- 7 -

19.   Under Brazilian law, as a general rule, an entity's ability to challenge a violation of its rights is born at the moment of the alleged unlawful violation. BCC art. 189 reads:

| Portuguese Original | English Translation |
| --- | --- |
| **Art. 189**. Violado o direito, nasce para o titular a pretensão, a qual se extingue, pela prescrição, nos prazos a que aludem os arts. 205 e 206. | **Art. 189**. If a right is violated, the claim is created for the holder, which is extinguished, by statute of limitations, in the time limits referred to in arts. 205 and 206. |

20.   According to Plaintiff's theory, the reason the Debtors lacked the resources to pay their debts was because the Borrowers allegedly sold their assets for less than adequate consideration and in violation of Brazilian law. But, if any creditor rights were violated by the Sale-Leaseback Transaction, that violation would have occurred in September 2014.

21.   Plaintiff claims that it was only when the Debtors' reorganization proceeding was converted into a bankruptcy in March 2018 "that the breach of establishment rules became actionable under Brazilian law." Am. Comp. ¶ 113. Plaintiff appears to invoke BBL art. 129, item VI, which renders ineffective sales of establishments made by debtors that thereafter become bankrupt within a certain time. To be rendered ineffective, the establishment sale must be made without the consent of the seller's creditors (or payment of their debts), and, after the sale, the seller must not have enough assets to pay its creditors. The text of BBL art. 129, item VI, which applies only when the debtor is in bankruptcy, is below:

| Portuguese Original | English Translation |
| --- | --- |
| **Art. 129.** São ineficazes em relação à massa falida, tenha ou não o contratante conhecimento do estado de crise econômico-financeira do devedor, seja ou não intenção deste fraudar credores:<br>[...]<br>VI – a venda ou transferência de estabelecimento feita sem o consentimento expresso ou o pagamento de todos os credores, a esse tempo existentes, não tendo restado ao devedor bens suficientes para solver o seu passivo, salvo se, no prazo de 30 (trinta) dias, não houver oposição dos credores, após serem devidamente notificados, judicialmente ou pelo oficial do registro de títulos e documentos; | **Art. 129.** [The following] are ineffective towards the bankrupt estate, whether or not the contracting party was aware of the debtor's state of economic and financial crisis, whether or not it was its intent to defraud creditors:<br>[...]<br>VI - the sale or transfer of an establishment made without the express consent or payment of all existing creditors, when the debtor did not remain with sufficient assets to settle his liabilities, unless, within a period of 30 (thirty) days, there is no opposition from creditors, after being duly notified, in court or by the officer of the registry of titles and deeds; |

22. However, upon completion of the Sale-Leaseback Transaction in September 2014, aggrieved creditors could have brought a claim under BCC art. 1,145 (assuming the facts supported such a claim). This claim is substantially the same as a claim brought under BBL art. 129, item VI. Both provisions condition the effectiveness of an establishment sale upon the consent of the seller's creditors or sufficient assets to settle the liabilities of the seller. The difference is that a claim under BCC art. 1,145 can be brought when the debtor is not in bankruptcy. The text of BCC art. 1,145 is below:

| Portuguese Original | English Translation |
| --- | --- |
| **Art. 1.145.** Se ao alienante não restarem bens suficientes para solver o seu passivo, a eficácia da alienação do estabelecimento depende do pagamento de todos os credores, ou do consentimento destes, de modo expresso ou tácito, em trinta dias a partir de sua notificação. | **Art. 1,145.** If the seller does not have sufficient assets to settle his liabilities, the effectiveness of the disposal of the establishment depends on the payment of all creditors, or their consent, expressly or tacitly, within thirty days from their notification. |

23. Thus, it is my understanding that the creditors of the Debtors did not need to wait until the reorganization was converted into a bankruptcy in March 2018 to challenge the Sale-Leaseback Transaction, assuming they had any viable cause of action. Instead, they could have brought a claim under BCC art. 1,145 upon completion of the Sale-Leaseback Transaction in September 2014.[11]

C. *Question 3: did the Sale-Leaseback Transaction or the Borrowers' repayment of Defendants' loans violate the "sale of establishment" rules under Brazilian law?*

24. Plaintiff alleges that the Sale-Leaseback Transaction violated Brazilian law because it was a "sale of establishment" that was impermissibly made without the consent of the

---

[11] Acts that cause a debtor to have insufficient assets to settle its liabilities are considered "means to defraud creditors" (*fraude contra credores*). These acts may be challenged through a fraudulent conveyance claim brought under BCC arts. 158-163, which provide general rules concerning fraudulent conveyances. However, BCC art. 1,145 specifically applies to fraudulent conveyances involving the sale of an establishment, and, as such, is the proper statute under which to analyze Plaintiff's claim. There is a legal debate on whether the accrual date of a fraudulent conveyance claim begins on the date of the transaction or on the date that creditors become aware of the transaction. Legal authorities suggest the proper trigger is the date of the transaction. *See* BCC art. 178, item II; São Paulo State Court of Appeals. Appeal 1000929-34.2020.8.26.0222. Justice Salles Rossi (May 10, 2022). In any event, I do not understand the amended complaints to allege that the Sale-Leaseback Transaction occurred in secret or otherwise was concealed from creditors.

- 9 -

creditors of the Debtors or their payment. Am. Compl. ¶¶ 109–113. In my opinion, Plaintiff is incorrect as a matter of Brazilian law.

25. As discussed above, the sale of an establishment may be challenged in two circumstances: (1) outside of a bankruptcy proceeding (when BCC art. 1,145 governs) and (2) during a bankruptcy proceeding (when BBL art. 129, item VI governs). Both provisions permit the then-existing creditors of the *seller* to challenge a sale when the *seller's creditors* do not approve or receive payment in full. Neither statute permits creditors of separate entities to challenge the seller's conveyance of its establishment or complain that their consent was not obtained. Here, the Borrowers were the owners of the *Amazonia* and *Pantanal*, not the Debtors. Thus, unless the Borrowers' separateness from the Debtors could be disregarded, Brazilian law would not allow the creditors of other entities (here, the Debtors) to revoke a sale of establishment by the Borrowers. As discussed above, in my opinion, the allegations in the amended complaints do not support disregarding the separateness of the Debtors and the Borrowers.

26. In any event, I believe the statutory provisions concerning establishment sales do not apply to the Sale-Leaseback Transaction for several additional reasons. From a ***reorganization/bankruptcy perspective***, the Borrowers were not a part of the reorganization nor are they debtors in the Bankruptcy Case. If a company is not a party to a liquidation proceeding, its transactions are out of reach from BBL art. 129.

27. Nonetheless, even if the Borrowers were debtors in the Bankruptcy Case, it is my opinion that the Sale-Leaseback Transaction would not be rendered ineffective under BBL art. 129 since it occurred more than half a year before the Debtors filed for reorganization. According to a decision from the Brazilian Superior Court of Justice, BBL art. 129, item VI reaches only

- 10 -

transactions that occur within the "suspect period,"[12] which in the Bankruptcy Case was set to 90 days prior to the Debtors' filing for reorganization. The request for reorganization was filed on April 17, 2015; thus, the suspect period began on Jan. 16, 2015—about four months after the Sale-Leaseback Transaction. Thus, BBL art. 129, item VI would not extend to the Sale-Leaseback Transaction.

28.     If the legal personalities of the Borrowers were disregarded such that they were made part of the Bankruptcy Case, the suspect period would begin even later. It would be measured from the date the bankruptcy court decreed the Borrowers were part of the liquidation, not from the date the Debtors filed for reorganization.[13] Accordingly, even if Plaintiff were to successfully move to disregard the separateness (which it has not), it would not bring the Sale-Leaseback Transaction within the reach of BBL art. 129, item VI.

29.     Because the **Borrowers are not subject to an insolvency proceeding**, it is my opinion that the Sale-Leaseback Transaction should be analyzed under BCC art. 1,145, discussed above.[14] Based on the facts alleged, it is my opinion that the Sale-Leaseback Transaction did not violate BCC art. 1,145.

30.     Both BCC art. 1,145 and BBL art. 129, item VI apply only to the transfer of an "establishment" which is understood to encompass the entire functionality of all of a business's

---

[12] Legal scholars debate application of the suspect period to BBL art. 129, item VI. *See* São Paulo State Court of Appeals; Writ of Mandamus 0337682-04.2009.8.26.0000; Justice Lino Machado (September 14, 2010); FAZZIO JR., W. (2019) *Lei de Falência e Recuperação de Empresas*. 8th edn. São Paulo: Atlas. p. 262; SCALZILLI, J. (2018) *Recuperação de empresas e Falência*. 3rd edn. São Paulo: Almedina. p. 889; *see also* SACRAMONE, M. (2021) *Comentários à Lei de Recuperação de Empresas e Falência*. 2nd. edn. São Paulo: Saraiva. p. 553-554. I understand that the better reasoned authorities conclude that the suspect period applies to BBL art. 129, item VI.

[13] *See* São Paulo State Court of Appeals. Appeal 0075303- 94.2012.8.26.0100; BEZERRA, M. (2021) *Lei de Recuperação de Empresas e Falência comentada*. 10th edn. Revista dos Tribunais. p. 25.

[14] This assumes that Brazilian law applies to the transaction, which is questionable considering it involved (1) a Delaware entity selling to a (2) Chinese-controlled entity (3) a vessel sailing under the Caymanian flag (4) temporarily in Brazilian jurisdictional waters. In my opinion, it is plausible to argue that Brazilian rules concerning establishment sales do not govern such transactions.

operations, assets, and rights.[15] The statutory definition of "establishment" is set forth in art. 1,142 of the BCC:

| Portuguese Original | English Translation |
|---|---|
| **Art. 1.142.** Considera-se estabelecimento todo o complexo de bens organizado, para exercício da empresa, por empresário, ou por sociedade empresária. | **Art. 1,142.** The establishment is considered as being the whole complex of organized assets, used for the exercise of the enterprise, by an entrepreneur, or by a commercial legal entity. |

31. Pursuant to the Sale-Leaseback Transaction, title to the *Amazonia* and *Pantanal* was transferred to a subsidiary of ICBC, but possession and economic use of the vessels remained with the Borrowers. The Sale-Leaseback Transaction therefore did not result in the transfer of the business operations of the Borrowers to the buyer, much less the complete functionality of all their assets and rights.

32. Further, Plaintiff alleges that in addition to the *Amazonia* and *Pantanal*, the entities in the so-called "Schahin Group" owned three other oil rigs and leased another, which provided a "significant source of income." Am. Compl. ¶ 110. According to Plaintiff, therefore, the Sale-Leaseback Transaction did not dispose of the entirety of those entities' operations, assets, and rights.

33. For these reasons, in my opinion, the Sale-Leaseback Transaction would not be characterized as a transfer of establishment that was detrimental to creditors, and the restrictions of BCC art. 1,145 would not apply.[16]

34. Therefore, I believe Brazilian law did not prohibit the Borrowers' repayment of Defendants' loans from the proceeds of the Sale-Leaseback Transaction. Because the Borrowers

---

[15] This is the common understanding among civil law scholars, as reflected in Statement No. 233 of the III Journey of Civil Law sponsored by the Council of the Federal Justice: "233 - Art. 1.142: The system regarding the contract outlined by the Civil Code in articles 1.142 et seq., especially its obligational effects, applies only when the set of transferred goods results in the transmission of the functionality of the business establishment."

[16] In my opinion, the same reasoning applies to a claim based on BBL art. 129, VI.

- 13 -

were not subject to a public formal insolvency proceeding, reorganization, liquidation, or an attachment of assets under a judicial enforcement proceeding in Brazil, the Borrowers were allowed to decide how to settle their debts.

Executed in São Paulo, Brazil, on May 19, 2022.

<em>/s/ Gabriel Seijo Leal de Figueiredo</em><br>
Gabriel Seijo Leal de Figueiredo